[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In both of these cases, the dispositive issue involves the construction of a lease between the city of Danbury, acting through its aviation commission, and Bluebird Aviation Corporation, which holds a permit as a fixed base operator (FBO) at the Danbury Airport for the purpose of providing aviation services to the public. In No. CV-89-0299905-S, Bluebird seeks damages and other relief against the city for breach of the terms of the lease and a covenant of good faith and fair dealing implied therein. In No. 91-0304282-S, Danbury seeks damages and costs for the failure of Bluebird to pay the permit fees required for its operations as an FBO at the airport in accordance with the schedule of such charges adopted by the aviation commission. The cases have been referred to this court for disposition and were consolidated for trial. Having heard the parties, the court has rejected Bluebird's claim that the lease excepted it from the general requirement of paying the minimum permit fees imposed by the aviation commission on all FBOs doing business at the Danbury Airport. Accordingly, the court renders judgment for the city in both cases.
 I.
On August 1, 1976, the parties executed a lease for one third of an acre of land owned by the city, adjacent to land that Bluebird had been using since 1967 for a flight instruction school and for parking airplanes. Bluebird had erected an airplane hangar on its land in 1973. The land leased from the city increased the space available to Bluebird and improved its access to the airport. John King had founded the Bluebird enterprise. After his death in 1975, his son, Richard King, operated the business from 1975 to 1983 together with John Trainer, who had acquired an interest in the corporation. In 1983 they sold all the CT Page 12685 capital stock of Bluebird to Frank Giumarra and his partner, who also acquired the land formerly owned by John King. Giumarra purchased the interest of his partner, who died in 1986, in both the corporation and the land, and has continued to operate the business until the present time.
The dispute between the parties arose in November, 1984, when the airport commission voted to raise the fees for various permits needed by an FBO to use the airport. Giumarra, who had purchased Bluebird the year before, opposed the increase at the commission hearing. After the vote, nevertheless, he paid the increased fees until November, 1989, when Bluebird commenced its suit against the city for breach of the lease. A report prepared by the city comptroller indicates that all permit fees that accrued prior to April, 1990, have been paid. (Ex. 10) Thereafter, Bluebird made payments for the period April, 1990, through June, 1994, that total $8925. The city, however, has billed charges of $38,250 for that period, a difference of $29,325.
The lease, which was drawn by the office of the Danbury corporation counsel and is dated August 1, 1976, provides for a twenty-five year term commencing on January 1, 1976, "at an annual rent in accordance with Paragraph 9.1 of the `Minimum Standards for Lease and/or Use of Danbury Municipal Airport,' as adopted by the Aviation Commission of the City of Danbury on June 11, 1970, as amended or in force as of the date of this lease. . . ." (Ex. 3) Two renewal options of ten years each are also given to the lessee. (Id.) The referenced paragraph of the standards requires an FBO to "pay as rent for land leased from the City an amount equal to six (6%) of the Fair Market value . . . as determined by the Tax Assessor of the City of Danbury on the most recent city-wide valuation prior to the signing of the lease. . . ." (Ex. 4) There is no claim that either party has violated paragraph 9.1 of the standards, which concerns the amount of rent to be paid for the leased property. The dispute involves only the effect of the city's agreement not to amend paragraph 9.2 of the standards on the authority of the aviation commission to raise the minimum fees set forth in paragraph 9.4 of the standards. Bluebird bases its refusal to pay the permit fee increases since April, 1990, on paragraph 7 of the lease, which provides: "All applicable provisions of `Minimum Standards for Lease and/or Use of the Danbury Municipal Airport' adopted by the Danbury Aviation Commission of the City of Danbury, Connecticut, on June 11, 1970, and as the same are amended from time to time (with the exception of Paragraph 9.1 and 9.2) are incorporated herewith and made a part hereof." On the basis of CT Page 12686 that paragraph, Bluebird claims that the city bound itself to make no change in the charges or fees specified in the excepted paragraphs, 9.1 and 9.2, of the 1970 standards for the duration of the lease.
Paragraph 9.2 of the 1970 standards provides that FBOs using the airport must pay permit fees based on the volume of business done in certain categories of services: "a fuel flowage fee . . .; an FBO airport use [fee] . . .; . . . [a] gross income from sales of all services [fee] . . .; [and a] rental and license income [fee]. . . ." at rates specified therein. Another provision of those standards, paragraph 9.4, which was not excepted from amendment by paragraph 7 of the lease, establishes "minimum annual FBO airport use fees and fuel flowage fees" as a "minimum that shall be paid in the event that the fees payable under Paragraph 9.2 do not exceed the minimum fee."
Bluebird relies on two additional paragraphs of the lease in support of its position that it is not obliged to pay the fee increases that have been voted by the aviation commission since the execution of the lease. Paragraph 15 gives the lessee two ten year renewal options "upon the same terms and conditions contained herein except that the annual rental shall be based upon the `Minimum Standards for Lease and/or Use of Danbury Municipal Airport' in effect at the time of renewal of the lease. . . ."
(Emphasis added). Paragraph 26 provides that during the initial twenty-five year term of the lease, "the Lessee shall pay Category Fees in accordance with Paragraph 9.2 [of the 1970 standards] as the same is in force as of the date of this Lease." It provides further that, if the option to renew is exercised, "the Lessee shall pay Category Fees in accordance with Paragraph 9.2 of the those standards "as the same is in force as of the first day of therenewal term." Those paragraphs undoubtedly strengthen Bluebird's argument that the city agreed not to modify paragraph 9.2 of the standards as applied to it for twenty-five years.
The city, nevertheless, did amend that paragraph in 1988 by substituting for the text, following the designation "9.2", a paragraph corresponding to paragraph 9.4 of the 1970 standards, which was eliminated. (Ex. I) The new paragraph 9.2 establishes a schedule of "minimum annual Airport use fees" applicable to all FBOs for each category of service provided pursuant to a permit from the aviation commission. The effect of this amendment was to require all FBOs holding a permit for a particular category of service to pay the same fee, regardless of the volume of business CT Page 12687 done by a permittee in that category. Under paragraph 9.2 of the 1970 standards, the fees chargeable for each service were calculated on the basis of the volume of business done, except that paragraph 9.4 of those standards established minimums payable only when the fees pursuant to paragraph 9.2 "do not exceed the minimum fee." The 1988 amendment, however, does not affect the rights of Bluebird because paragraph 7 of the lease excepts paragraph 9.2 of the 1970 standards from modification so far as it is concerned during the term of the lease.
 II.
In claiming that the fee increases adopted by the aviation commission in 1984 and subsequent years did not violate the terms of the lease, the city has taken two positions. When the dispute with Bluebird over the fee increases was first referred to the office of the corporation counsel, the advisory letter prepared by an assistant corporation counsel expressed the view that Bluebird's "claim of exemption from paragraphs 9.1 and 9.2 of the Revised Rules and Regulations is not appropriate" because "the 1976 lease is not effective as to the parcel of property and building thereon owned and operated by Mr. Giumarra and which property is the situs of sales and marketing of aircraft and aircraft supplies." (Ex. 5) As refined in the briefs filed in behalf of the city after trial, the city's first position is that the lease involves only the one third acre of city-owned land described in the lease and has no impact on Bluebird's operations on the adjoining land owned by Giumarra, on which the city claims that all of the activities requiring payment of fees are conducted.
The second position of the city appears in an advisory letter of the same assistant corporation counsel relating to a similar lease with another FBO, which also contains comments on the Bluebird lease. The letter points out that paragraph 9.4 of the standards in effect in 1977 "was not excepted from amendment under the terms of [that FBO's] lease in 1977." (Ex. 6) It declares that "Bluebird and [the other FBO] retain their rights under their lease agreements in that they pay according to Paragraph 9.1 and 9.2 of the minimum standards in force at the time the leases were signed in 1977." The letter concludes, nevertheless, that both lessees must pay the minimum category fees set forth in Paragraph 9.2 of the standards as revised to 1987 because the leases had never excepted from future amendment Paragraph 9.4 of the 1970 standards, which had set forth the minimum fees applicable at the time of the lease. Paragraph 9.4 of the 1970 standards provides CT Page 12688 that "minimum annual FBO Airport use fees and fuel flowage fees shall apply to all FBOs (either on or off airport) for each category of service" and that "[t]he minimum annual fee is not additional to Lees established in Paragraph 9.2 above, but [is] the minimum that shall be paid in the event the fees payable under Paragraph 9.2 do not exceed the minimum fee."
 III.
This court is not persuaded that there is any merit in the city's first position, that the lease has no effect upon Bluebird's obligation to pay the minimum fees simply because the land described therein has been used principally for parking of airplanes (tie-downs), for which no fee may be charged under the standards, and has been used only occasionally for the purpose of conducting activities for which a permit is required. That position is inconsistent with the city's advisory letter relating to its second position that Bluebird retained its right under the lease to "pay according to Paragraph 9.1 and 9.2" of the 1970 standards. The lease indicates that the lessee intended to use the land "for the purpose of conducting business as a fixed base operator" at the airport. It contains no restriction that would prevent Bluebird from using the land for any function related to such a business, including those for which a permit would be needed. The rights and obligations of the parties were determined at the time the lease was executed and cannot be altered by the subsequent use of the property. The inclusion in the lease of a provision preserving from revision paragraph 9.2 of the 1970 standards, which establishes the rates for calculation of the fees for permits needed by Bluebird to operate its existing business on the land adjacent to the leased property, indicates that those standards were to govern the relationship of the parties with respect to both parcels of land. Indeed, if the city intended otherwise, it would have been wholly unnecessary to refer to the standards in the lease, since Bluebird, like other FBOs, would have been bound by them in any event. The references to paragraphs 9.1 and 9.2 in the lease, excepting them from the general authority of the Aviation Commission to amend the standards, must be construed to provide assurance that those paragraphs would not be modified during the twenty-five year term of the lease.
 IV.
The city's second position, on which supplemental briefs have been submitted as ordered by the court, is that paragraph 7 of the CT Page 12689 lease does not except from amendment paragraph 9.4 of the 1970 standards, which establishes "minimum annual FBO airport use fees and fuel flowage fees . . . [that] apply to all FBOs . . . for each category of service." The minimum fees "are not additional to fees established in Paragraph 9.2 above, but are the minimum that shall be paid in the event the fees payable under Paragraph 9.2 do not exceed the minimum fee."
This court agrees with the city that no provision of the lease precludes amendment of paragraph 9.4 of the standards or excepts Bluebird from the effect of increasing the minimum fees set forth therein, which are applicable to all FBOs. Bluebird, nevertheless, relies on paragraph 26 of the lease, which provides that "the lessee shall pay Category Fees in accordance with Paragraph 9.2 of (the) [1970 standards] . . . as the same is in force as of the date of this lease." That provision undoubtedly barred the city from increasing the rates applicable to the volume of business done by Bluebird in the specified categories for the purpose of calculating its fees pursuant to paragraph 9.2. It cannot, however, be deemed to except Bluebird from the payment of the minimum fees set forth in paragraph 9.4 in the event that the fees based upon its volume of business as calculated pursuant to paragraph 9.2 should be less than the minimums established by paragraph 9.4. Nor can it be construed to provide assurance that increases in the minimum fee schedule of paragraph 9.4 for all FBOs at the airport would not apply to Bluebird. Paragraph 26 of the lease, on which Bluebird relies, guarantees that the rates for calculating fees on the basis of its business volume pursuant to paragraph 9.2 of the standards cannot be increased, but does not relieve Bluebird from payment of the minimum fees, as required by paragraph 9.4 of the standards.
The evidence indicates that Bluebird is one of the smallest FBOs at the airport as measured by its number of employees, hangar area, and based aircraft. The minimum fees presently in effect probably require Bluebird to pay a higher proportion of its gross income for the permits required to conduct its business than for most other FBOs at the airport. Undoubtedly they are much higher than those it would have to pay pursuant to paragraph 9.2 of the 1970 standards, which are based on business volume. The result is that the benefit Bluebird may have gained from the lease provision excepting it from any amendment of paragraph 9.2 for the term of the lease has disappeared. Such a hardship, however, provides no legal basis for this court to conclude that the exception of paragraph 9.2 of the standards from amendment for the term of the lease, as provided in paragraph 7 of the lease, also exempted CT Page 12690 Bluebird from the payment of any increases in the minimum fees listed in paragraph 9.4 of the 1970 standards. Accordingly, Bluebird's claim in the first count of its complaint that the city has breached the terms of the lease by insisting on payment of the minimum fees as they have been raised from year to year rather than those in force when the lease was executed is without merit.
The second count of Bluebird's complaint is predicated largely on the validity of its claim of breach of contract in the first count, which the court has resolved against it. It contains, however, three allegations that may be intended independently to support the claim of tortious breach of an implied covenant of good faith and fair dealing pleaded in that count: (1) failing to allow Bluebird the equal use and enjoyment of the airport facilities; (2) interfering with its sale of fuel through discriminatory enforcement of airport regulations; and (3) unfairly competing with it in tie-down of planes by discriminatory enforcement of regulations. Without reviewing the evidence presented by both parties on these issues, the court has concluded that none of these discrimination claims has been proved by a fair preponderance of the evidence.
With respect to the city's complaint seeking damages for failure of Bluebird to pay the minimum permit fees applicable to its activities as an FBO, the court finds the issues for the city and awards damages of $29,325, the difference between the amount paid by Bluebird for the period April, 1990, through June, 1994, and the amount billed by the city for that period. (Ex. 10)
In No. CV-89-029905-S, it is ordered that judgment enter for the defendant city of Danbury with costs. In No. CV-91-0304282-S, it is ordered that judgment enter for the plaintiff city of Danbury to recover of the defendant Bluebird damages of $29,325 with costs.
David M. Shea State trial referee